UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THE METHODIST HOSPITALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:11-cv-36 |
| | ) |
| FTI CAMBIO, LLC, HEALTHNET | ) |
| SYSTEMS CONSULTING, INC., | ) |
| CLIFTON JAY, and MEDICAL | ) |
| INFORMATION TECHNOLOGY, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This case arises out of Plaintiff Methodist Hospitals' claim that it was bamboozled by Defendants into buying and installing faulty software to run its day-to-day operations. Earlier this year, in an Opinion dated July 1, 2011, I granted in part and denied in part two motions to dismiss and gave Methodist leave to file an Amended Complaint, which it did. Defendant Medical Information Technology ("Meditech") has now answered the Amended Complaint, but Defendants FTI Cambio, HealthNET Systems Consulting, and Clifton Jay have jointly filed a motion to dismiss [DE 79]. That motion, which seeks only to dismiss Count 3 of the Amended Complaint for fraud and to strike various other alleged averments of fraud, is now before the Court. For the reasons explained in detail below, this motion will be denied.

**FACTUAL BACKGROUND**

The basic factual backdrop of this case can be found in the Opinion of July 1, 2011, and I will thus not rehearse it in detail here. Suffice it to say that Methodist operates hospitals and

outpatient healthcare facilities in northwest Indiana.  In 2006, Methodist hired FTI Cambio, a healthcare management company, to provide consulting services.  FTI Cambio in turn hired HealthNET Systems Consulting, a healthcare information technology consulting firm run by Clifton Jay.

As part of the technology consulting services, HealthNET conducted an assessment of Methodist's information technology system.  Methodist already had a healthcare information software system called Epic, which it had purchased in 2004 and which it was in the process of implementing.  According to the Complaint, however, FTI Cambio, HealthNET, and HealthNET's President Clifton Jay concluded that "Epic was a larger, more complicated, and more expensive system than Methodist needed," and Jay thus recommended that "Methodist discontinue implementing the Epic Software and, instead, purchase and implement a health care information system designed by Meditech."  [DE 77 at 10.]

In 2007, HealthNET prepared a due diligence report for Methodist that ultimately concluded that there would be significant overall cost savings in moving from the Epic software to the Meditech software.  As part of this report, Jay presented a "Business Case" analysis to the Finance Committee of Methodists's Board of Directors.  Methodist alleges that Jay made a variety of misrepresentations in that presentation, including that it would cost $25 million to finish installing the Epic system, when in fact Jay well knew that the costs would have been only $11-13 million.  Jay also told Methodist that it would cost $3 million more each year to maintain the Epic system than it would to maintain the Meditech system, when in reality the Epic system would only cost $500,000 to $600,000 per year.  Jay also allegedly misrepresented that the Meditech Software could be installed with little or no customization.

2

In another set of alleged misrepresentations, Jay stated that HealthNET had extensive experience with Meditech and was highly qualified to assist Methodist in implementing the Meditech Software, even though in reality HealthNET had never implemented the version of the Meditech Software that was to be implemented at Methodist. Moreover, Jay failed to disclose that Meditech maintains a list of qualified consultants that it recommends its customers hire to implement the "advanced clinicals" component of the Meditech Software and that HealthNET was not included on that list.

Ultimately, Methodist agreed to switch to the Meditech software and to hire HealthNet to guide its implementation. If one is to believe Methodist, as I must at this stage in the case, the implementation did not go well, and this case followed.

## DISCUSSION

Methodist's Amended Complaint raises seven counts based on a variety of theories. The only issue that I need to decide at present, however, is whether the allegations of fraud contained in Count 3 are sufficient.

Under Rule 9(b), a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Seventh Circuit has repeatedly described this requirement as the "who, what, when, where, and how" of the fraud – "the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Some courts have evidently taken this catchphrase and applied it in a much too formulaic way, however, because the Seventh Circuit recently cautioned that "courts and litigants often erroneously take an overly rigid view of [that] formulation." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442

(7th Cir. 2011). As the Seventh Circuit stated, "the requisite information – what gets included in that first paragraph – may vary on the facts of a given case." *Id.*

It is true that "[m]ere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires a misrepresentation of material fact." *Block v. Lake Mortg. Co., Inc.*, 601 N.E.2d 449, 451 (Ind. App. 1992). Nonetheless, "the general rule in Indiana is that if a statement is 'susceptible of exact knowledge' when made, it is a statement of fact rather than opinion." *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 2009 WL 449173, at *3 (N.D. Ind. Feb. 23, 2009) (quoting *Smart & Perry Ford Sales, Inc. v. Weaver*, 274 N.E.2d 718, 721 (Ind. App. 1971)); *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986) ("An opinion is a subjective statement of belief 'on which no reasonable [person] should justifiably rely.'") (quoting *Whiteco Properties, Inc. v. Thielbar*, 467 N.E.2d 433, 437 (Ind. App. 1984)). Whether a representation is an expression of opinion or a statement of fact depends on the facts and circumstances of the case. *Plymale v. Upright*, 419 N.E.2d 756, 763 (Ind. App. 1981). Moreover, "fraud is not limited only to affirmative representations; the failure to disclose all material facts can also constitute actionable fraud." *Lawson v. Hale*, 902 N.E.2d 267, 275 (Ind. App. 2009).

It's often a difficult judgment to determine when exactly a fraud allegation crosses over the hazy line of "particularity" under Rule 9(b). But for now I'm convinced that Methodist's allegations cross that threshold. Methodist alleges that Jay intentionally misrepresented the relative costs of the Epic and Meditech software – both in their startup and maintenance costs – and in doing so have alleged the who (Jay), what (cost of software), when (July 2007), where (presentation of "Business Case" analysis), and how (making affirmative misrepresentations) of

4

a fraud. Thus, "Jay intentionally made false and misleading representations to Methodist regarding the relative costs associated with the Epic Software and the Meditech Software." [DE 77 at 25.] This is sufficiently particular to state a fraud claim on the theory that Jay knew his estimates were wrong or that they lacked any reasonable basis. *See*, *e.g.*, *Grassi v. Information Resources, Inc.*, 63 F.3d 596, 599 (7th Cir. 1995) (a financial projection is actionable if the defendant "did not genuinely believe the projection or … the projection lacked any reasonable basis at the time it was made").

Defendants rely heavily on *Clinton County v. Clements*, 945 N.E.2d 721 (Ind. App. 2011) to argue that "a cost estimate for a software upgrade is an opinion." [DE 84 at 7.] It is true that the court in *Clinton County* did find that the software estimate in that case was an opinion. But that doesn't mean that "a cost estimate for a software upgrade" is *always* an opinion and could never be a fact – it depends entirely on the circumstances of the case. *See*, *e.g.*, *Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 391 (7th Cir. 2007) (contrasting an appraisers's good-faith estimate as an opinion, "which can be neither true nor false," with affirmatively "whipping up bogus estimates," which would constitute fraud). So if, for example, Jay *knew* it would only cost $13 million to install software but conjured up a bogus estimate for Methodist that it would actually cost $25 million – as Methodist alleges – it's hard to see how that wouldn't amount to fraud.

It's worth noting as well that *Clinton County* involved statements by the county auditor to the county board about the cost of implementing software, a factual backdrop distinguishable from the present situation where Jay, as the head of a healthcare information technology consulting firm, would be expected to have some expertise on the costs of the software.

5

Moreover, the decision in *Clinton County* came on summary judgment – not on a motion to dismiss. The court concluded that, based on the evidence presented at summary judgment, the plaintiff had failed to show that the defendant knew the software upgrade would only cost $5,000 at the time she said it would cost more than $200,000. *Clinton County*, 945 N.E.2d at 728. FTI Cambio, HealthNET, and Jay may very well be able to follow that same path because to avoid summary judgment Methodist will have to prove that Jay knew at the time he made the estimates that they were false or were without any reasonable basis – a burden that will no doubt be a tall order. But at this early pleading stage of the case, Methodist has sufficiently stated a claim for fraud.

Beyond the allegations regarding the cost of software, Plaintiffs also allege that Jay made fraudulent statements with respect to the implementation required for the Meditech software and whether HealthNet was actually qualified to run that implementation. Whether those statements were knowing or reckless misrepresentations of fact will have to be sorted out in discovery, but, like the costs-of-software allegations, they have been sufficiently pled at this stage in the case. *See* DE 77 at 25-26 ("Jay also intentionally made false and misleading representations that a 'vanilla' implementation of the Meditech Software was appropriate. . . . Jay also intentionally made false and misleading representations to Methodist regarding HealthNet's qualifications to lead the implementation of the Meditech Software at Methodist.").

I noted in my July 1, 2011 Opinion that whether Jay's statements constituted "fraud – a knowing and intentional misrepresentation – or merely salesmanship remains to be seen." [DE 73 at 16.] That remains the case. But for purposes of pleading in their Amended Complaint, Methodist has sufficiently stated a claim for fraud.

6

## CONCLUSION

Accordingly, Defendants FTI Cambio LLC, Healthnet Systems Consulting Inc, and Clifton Jay's Joint Motion to Dismiss [DE 79] is **DENIED.**

**SO ORDERED.**

ENTERED: December 5, 2011

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT